IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Nos. 3:18-CR-35-KAC-JEM |
| ) | 3:20-CR-73-KAC-JEM |
| ) | |
| JOSHUA STEVEN BRINYARK, ) | |
| ) | |
| Defendant. ) | |

**ORDER OF DETENTION**

This case came before the Court on January 29, 2026, for a detention hearing to determine Defendant's release or detention pending his revocation hearing in case numbers 3:18-CR-35 and 3:20-CR-73. *See* 18 U.S.C. § 636(b). Assistant United States Attorney Michael Gilmore and Berkeley Kendrick[1] appeared on behalf of the Government. Attorney Jonathan Moffatt represented Defendant Joshua Brinyark, who was also present.

After serving a term of imprisonment for a 2018 conviction for felon in possession of a firearm and a 2021 conviction for escape, Defendant began his current term of supervised release on July 8, 2024 [Doc. 38 p. 2].[2] On January 20, 2026, Defendant appeared before the Court on a Petition for Warrant for Offender Under Supervision ("Petition") [Doc. 38]. He requested a detention hearing at that time [Doc. 44]. *But see United States v. Moore*, No. 20-3497, 2020 WL 6580481, at *1 (6th Cir. July 8, 2020) (explaining that "for alleged violations of

---

[1] Ms. Kendrick appeared as an extern for the United States Attorney's Office and argued on its behalf.

[2] Citations are to Case No. 3:18-CR-35 unless otherwise noted.

supervised release no rule or statute expressly requires a hearing before detention on a supervised release violation" (citing *United States v. Greene*, 158 F. App'x 941, 942 (10th Cir. 2005)). For the reasons set forth below, the Court finds that Defendant shall be detained pending his revocation proceedings.

I. ANALYSIS

With respect to the release or detention of persons appearing for an alleged violation of probation or supervised release, the Court shall order that the defendant be detained unless it finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of others or the community if released. 18 U.S.C. § 3143(a); Fed. R. Crim. P. 32.1(a)(6); *see also United States v. McIntosh*, No. 02–CR–20049–02, 2012 WL 762614, at *1 (E.D. Mich. Mar. 9, 2012) (observing that § 3143(a) "establishes a presumption in favor of detention that is rebuttable only upon the Defendant showing, by clear and convincing evidence, that he or she is not likely to flee or pose a danger to any other person or the community"). The defendant bears the burden of showing that he will not flee or pose a danger to others or the community. Fed. R. Crim. P. 32.1(a)(6). In evaluating whether Defendant presents a danger or a flight risk, the Court has looked to the § 3142(g) factors. *See United States v. Tolbert*, Nos. 3:09-CR-56 & 3:10-CR-30, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (considering § 3142(g) factors in determining "whether the defendant's release is proper under § 3143(a)(1)"); *but see Moore*, 2020 WL 6580481, at *2 (finding the district court erred in "conflat[ing] the standards for pretrial bail from § 3142(g) and those for release pending a revocation proceeding under § 3143(a)(1)"). As discussed below, those factors weigh in favor of Defendant's detention pending revocation proceedings.

The first factor concerns the nature and circumstances of the charged offenses, including whether the defendant is charged with a crime of violence or terrorism or involves a controlled

2

substance, minor victim, firearm, or explosive or destructive device. 18 U.S.C. § 3242(g)(1). With respect to the revocation proceedings, it is alleged that Defendant repeatedly failed drug tests issued by the U.S. Probation Office ("USPO"). According to the USPO Petition, on November 14, 2024, until his final report to the USPO, on October 30, 2025, Defendant tested positive for several controlled substances, including methamphetamine, MDMA, and marijuana [Doc. 38 pp. 2–3]. Methamphetamine, which Defendant admitted to using throughout those eleven months of testing, is a dangerous controlled substance. *See United States v. Bishop*, No. 6:06-CR-10, 2019 WL 2427964, at *5 (E.D. Ky. May 9, 2019), *report & recommendation adopted by* 2019 WL 2427951 (E.D. Ky. June 10, 2019) (describing methamphetamine as a "dangerous drug"). Upon receiving his positive test results, Defendant signed a form admitting to the dates he used the substances [*Id.*]. Given Defendant's admission of repeated drug use, the Court finds this factor weighs in favor of detention.

The Court next examines the weight of the evidence of Defendant's dangerousness. 18 U.S.C. § 3142(g)(2); *see also United States v. Stone*, 608 F.3d 948 (6th Cir. 2010) (observing that factor (g)(2) "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt"); *United States v. Villegas*, No. 3:11-CR-28, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011) ("In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." (citation omitted)). Here, the Government highlighted Defendant's high flight risk based on his most recent conviction of escape for fleeing a halfway house while serving time for his original convictions. Additionally, the Government argued Defendant's criminal history, outlining several arrests for failure to appear dating back to 2007, establishes a pattern and is further evidence of flight risk. In response, Defendant argued that if allowed to participate in the in-patient treatment program, the risk of flight is less because he will be in a controlled environment and facility workers are watching to

3

make sure Defendant does nothing wrong. As the Government reiterated throughout the hearing, however, Defendant fled a prior alternative arrangement to imprisonment. Furthermore, Defendant's repeated drug use, even while in a treatment program, necessarily requires the purchasing and possession of drugs, increasing Defendant's dangerousness to the community. The Court, therefore, finds the weight of the evidence weighs in favor of detention.

As for the third factor, the Court considers Defendant's history and characteristics, many of which are outlined in the previous presentence investigation reports [Case No. 3:18-CR-35 Doc. 23 & Case No. 3:20-CR-73 Doc. 20]. 18 U.S.C. § 3142(g)(3)(A). At the hearing, defense counsel acknowledged that Defendant has a drug problem. Defendant was employed at Waffle House prior to his arrest where he worked long hours, which he said was stressful. At hearing, Defendant reported attempting to do intensive out-patient treatment, but the Government stated his counselor for that program told the USPO he was unsuccessful and stopped attending around October or November 2025, prior to completing the program. As the USPO Petition indicates, Defendant has a long criminal history, beginning at the age of 18 with drug possession charges [Doc. 38 p. 4]. His arrests since then include various drug charges; moving violations; theft and aggravated burglary charges in 2013; criminal trespassing and theft of property charges in 2014; burglary, theft, and vandalism charges in 2017; and felon in possession of a firearm in 2018, which led to his first conviction in this case [*Id.*]. *See Tolbert*, 2017 WL 6003075, at *4 (holding that "the court may consider both actual convictions and mere arrests or indictments to assess the defendant's dangerousness, though the latter will typically weigh less heavily in favor of detention"); *United States v. Acevedo-Ramos*, 755 F.2d 203, 209 (1st Cir. 1985) (finding that judges may "rely on a defendant's past bad conduct that had led to indictment but not conviction" under some circumstances). Additionally, he was convicted of escape in 2021 while serving time for the firearm possession conviction [*Id.* at 1]. The Government stated at hearing that after several

4

failed drug tests, the USPO instructed Defendant to turn himself in, but he did not. Instead, the Government stated he ceased communication with the USPO. Based on Defendant's extensive criminal history, including several failure-to-appear charges, Defendant's history and characteristics weigh in favor of detention. *See United States v. Sykes*, 453 F. Supp. 3d 1011, 1017 (E.D. Mich. Apr. 13, 2020) ("Given his past criminal conduct . . . and apparent disregard for the terms of his probation, [the defendant's] history and characteristics weigh strongly in favor of detention."), *aff'd*, 2020 WL 4036213 (6th Cir. July 15, 2020).

Finally, under 18 U.S.C. § 3142(g)(4), the Court must consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." The Court finds Defendant poses a danger to the community due to his involvement in possessing and using methamphetamine and other drugs. *See United States v. Morgan*, 657 F. Supp. 3d 976, 983 (E.D. Mich. 2023) ("Society as a whole is the victim when illegal drugs are being distributed in its communities." (quoting *United States v. Green*, 532 F.3d 538, 549 (6th Cir. 2008))). Additionally, that Defendant escaped from a halfway house while serving a prior sentence and his continued drug use while on supervised release give the Court no confidence he would abide by any conditions this Court would impose. *See United States v. Pacheco*, No. 3:21-CR-00022, 2021 WL 5979531, at *1 (E.D. Ky. Dec. 17, 2021) ("[C]ondition effectiveness inherently hinges on a defendant's predicted good faith compliance.").

Defendant proposed a release on conditions, which included participation in an in-patient drug treatment program at Centerpoint, a Helen Ross McNabb facility. Defendant explained the program would require his attendance for 28 days, and during that time, he would be unable to leave. Defendant stated a bed would be available on March 9, 2026, which is after his upcoming revocation hearing before District Judge Crytzer. If approved, Defendant explained that defense counsel, or someone in his office, would drive Defendant from the Court to the facility, assuming

the U.S. Marshal Service ("USMS") would transport Defendant from his place of detention to the Court. Defendant said he will file a motion with the District Judge asking to continue the revocation hearing until after the 28-day inpatient program. Upon release from the program, Defense counsel would pick up Defendant, transport him back to the Court, and remand him to USMS custody until his revocation hearing. Defendant maintained this proposal was not to improve his case, but, instead, to get the treatment he needs. He further argued that this alleviates any danger to the community. But Defendant points to no authority allowing the Court to authorize such a transfer of custody from the USMS to Defendant's counsel and then back again.[3] And Defendant points to no other conditions for the Court to consider imposing after any successful treatment program that would show he will not flee or pose a danger to others or the community. Fed. R. Crim. P. 32.1(a)(6).

In sum, Defendant fails to carry his burden of showing by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of others or the community if released. Therefore, Defendant is **ORDERED DETAINED** pending the resolution of his revocation cases.

For the reasons discussed herein, the Court **ORDERS** as follows:

(1) Defendant Brinyark is **ORDERED DETAINED** pending further proceedings in his revocation hearing in case numbers 3:18-CR-35 and 3:20-CR-73;

(2) Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

---

[3] While § 3142 allows for temporary release, it is only under the "custody of a United States marshal or another appropriate person" if it is necessary for a compelling reason. Defendant did not offer an appropriate custodian for his proposed treatment program nor does he show compelling reason to release him in light of his recent unsuccessful attempts at treatment and defense counsel's representation that Defendant turns to substance abuse when in stressful situations.

6

(3) Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel; and

(4) On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

Jill E. McCook
United States Magistrate Judge